UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JEFFREY APPLEMAN, CPA,

Case No.: 2:25-cv-05593 (JMW)

Plaintiff,

-against-

CALLAN JMB INC., COLDCHAIN TECHNOLOGY
SERVICES, LLC, and WAYNE WILLIAMS, in his
individual and professional capacities,

Defendants.
-------------------------------------------------------------------x


# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS THE COMPLAINT

SICHENZIA ROSS FERENCE CARMEL LLP
*Attorneys for Defendants*
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................. 1

**FACTS ALLEGED IN THE COMPLAINT** ................................................. 3

**LEGAL STANDARD** ............................................................................ 4

   i.     Conflicts of Law ....................................................................... 5

**ARGUMENT** ....................................................................................... 5

  **POINT I** ............................................................................................ 5

     PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED
     OR IN THE ALTERNATIVE, DAMAGES SHOULD BE LIMITED
     TO FINAL COMPENSATION OWED, IF ANY ............................................. 5

  **POINT II** ........................................................................................... 8

     PLAINTIFF'S CLAIM FOR DEFAMATION SHOULD BE DISMISSED ................... 8

  **POINT III** .......................................................................................... 11

     COUNT IV FOR TORTIOUS INTERFERENCE
     WITH PROSPECTIVE BUSINESS RELATIONSHIPS SHOULD BE DISMISSED ...... 11

  **POINT IV** .......................................................................................... 13

     THE PLAIN LANGUAGE OF THE AGREEMENT
     ESTABLISHES THAT COUNT V MUST BE DISMISSED ................................. 13

  **POINT V** ........................................................................................... 14

     COUNT VII – NEGLIGENT INFLICTION
     OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW ......................... 14

  **POINT VI** .......................................................................................... 14

     DEFENDANT COLDCHAIN SHOULD BE DISMISSED FROM THIS ACTION ...... 14

  **CONCLUSION** ................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*16 Casa Duse, LLC v. Merkin,*
791 F.3d 247 (2d Cir. 2015) ........................................................................ 12

*684 East 222nd Realty Co., LLC v. Sheehan,*
185 A.D.3d 879 (2020) ................................................................................ 12

*Allen v. Vertafore, Inc.*
28 F.4th 613 (5th Cir. 2022) ......................................................................... 4

*Am. Mfrs. Mut. Ins. Co. v. Schaefer,*
124 S.W.3d 154 (Tex.2003) ........................................................................ 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................... 4

*Associated Press v. Cook,*
17 S.W.3d 447 (Tex. App. 2000) ................................................................ 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................... 4

*Berkseth-Rojas v. Aspen Am. Ins. Co.,*
2021 WL 2936033 (N.D. Tex. July 13, 2021) ............................................ 6

*Brunnemann v. Terra Int'l, Inc.,*
975 F.2d 175 (5th Cir. 1992) ....................................................................... 14

*Coinmach Corp. v. Aspenwood Apartment Corp.,*
417 S.W.3d 909 (Tex. 2013) ....................................................................... 12

*Columbia Valley Reg'l Med. Ctr. v. Bannert,*
112 S.W.3d 193 (Tex. App. 2003) .............................................................. 9

*Conaway v. Control Data Corp.,*
955 F.2d 358 (5th Cir. 1992) ....................................................................... 14

*Corrosion Prevention Techs. LLC v. Hatle,*
No. 4:20-CV-2201, 2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) ............ 12

*Einhorn v. LaChance,*
823 S.W.2d 405 (Tex. App. 1992) .............................................................. 9

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*
344 F.Supp.2d 986 (S.D. Tex. 2004) ............................................................. 5

*Ferguson v. Hilton Hotels Corp.*
No. CIV.A. H–09–4114, 2011 WL 1485680 (S.D. Tex. Apr. 19, 2011) .......................... 9

*Fiorenza v. First City Bank-Cent.,*
710 F. Supp. 1104 (E.D. Tex. 1988) ............................................................. 14

*Giordano v. Gerber Scientific Products, Inc.*
24 Fed.Appx. 79 (2001) ............................................................................. 14

*Great Am. Ins. Co. v. Goin*
2017 WL 4238698 (N.D. Tex. Sept. 25, 2017) ................................................ 6

*Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*
356 S.W.3d 54 (Tex. App. 2011) ............................................................ 5–7, 10

*Hale v. King,*
642 F.3d 492 (5th Cir. 2011) ...................................................................... 4

*Henriquez v. Cemex Mgmt, Inc.,*
177 S.W.3d 241 (Tex. App. 2005) ................................................................ 9

*Hurlbut v. Gulf Atl. Life Ins. Co.*
749 S.W.2d 762 (Tex. 1987) ...................................................................... 10

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*
No. 3:16-CV-2410-G, 2017 WL 3086035 (N.D. Tex. July 20, 2017) ........................ 12

*Izaguirre v. Aguilar,*
No. 13-19-00225-CV, 2021 WL 727017 (Tex. App. Feb. 25, 2021) ........................ 9

*L.P. v. Barclays Bank PLC,*
594 F.3d 383 (5th Cir. 2010) ...................................................................... 4

*LeBlanc v. Bedrock Petroleum Consultants LLC,*
No. CV H-20-3476, 2021 WL 3884265 (S.D. Tex. June 3, 2021) ........................... 8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
594 F.3d 383 (5th Cir. 2010) ...................................................................... 4

*Loughlin v. Goord,*
558 F.Supp.3d 126 (2021) ........................................................................ 10

*Martin v. Orbital Energy Grp., Inc.*,
No. 3:22-CV-1968-B, 2023 WL 2169909 (N.D. Tex. Feb. 22, 2023) ........................................ 14

*Means v. ABCABCO, Inc.*,
315 S.W.3d 209 (Tex. App. 2010) ........................................................................................ 9, 10

*Offor v. Mercy Medical Center,*
171 A.D.3d 502 (2019) .............................................................................................................. 14

*Payne v. Enable Software, Inc.*,
229 A.D.2d 880, 645 N.Y.S.2d 916 (1996) ............................................................................... 8

*President Container Group II, LLC v. Systec Corporation,*
467 F.Supp.3d 158 (2020) .......................................................................................................... 8

*Pureshield, Inc. v. Allied Bioscience, Inc.*,
No. 4:20-CV-734-SDJ, 2021 WL 4492861 (E.D. Tex. Sept. 30, 2021) .................................... 12

*Quicksilver Resources, Inc. v. Eagle Drilling, LLC*,
792 F.Supp.2d 948 (2011) .......................................................................................................... 5

*Roof Sys., Inc. v. Johns Manville Corp.*,
130 S.W.3d 430 (Tex. App. 2004) .............................................................................................. 5

*San Antonio Credit Union v. O'Connor*,
115 S.W.3d 82 (Tex. App. 2003) .............................................................................................. 10

*Smith v. Heritage Constructors, Inc.*,
No. 06-19-00107-CV, 2020 WL 3967952 (Tex. App. July 14, 2020) ......................................... 5

*Stone v. FINRA,*
694 F. Supp. 3d 774 (E.D. Tex. 2023) ...................................................................................... 12

*Thomas-Smith v. Mackin,*
238 S.W.3d 503 (Tex. App. 2007)............................................................................................. 11

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011) ...................................................................................................... 4

*WFAA-TV v. McLemore*,
978 S.W.2d 568, 41 Tex. Sup. Ct. J. 1394 (Texas 1998) ........................................................... 8

*Wright v. Dollar Tree Stores, Inc.*,
No. 3:14-CV-01472-N, 2014 WL 11456816 (N.D. Tex. Sept. 16, 2014) .................................... 4

**Statutes**

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1, 4

**Other Authorities and References**

2 Philip Bruner & Patrick O'Connor, *Construction Law* § 5:270 (2002) ................................. 5, 6

Callan JMB Inc., Form 8-K (May 15, 2025)
https://www.sec.gov/Archives/edgar/data/2032545/000164117225011058/form8-k.htm ......... 2, 9

Callan JMB Inc., Form 8-K, Exhibit 99.1, Press Release of the Company (May 15, 2025)
https://www.sec.gov/Archives/edgar/data/2032545/000164117225011058/ex99-1.htm ............... 2

Defendants Callan JMB Inc. ("Callan"), Coldchain Technology Services, LLC ("Coldchain"), and Wayne Williams ("Williams") (collectively, "Defendants"), by and through their attorneys, Sichenzia Ross Ference Carmel LLP, respectfully submit this memorandum of law in support of their motion (the "Motion") to partially dismiss the Complaint ("Compl.") (Dkt. No. 1) filed by Jeffrey Appleman ("Appleman" or "Plaintiff") under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This matter arises from Plaintiff's rightful termination from his position as Chief Financial Officer ("CFO") of Callan for cause. Plaintiff's termination was publicly disclosed via a statutorily required 8-K filing ("SEC 8-K") with the Securities and Exchange Commission ("SEC"). Despite the clear terms outlined in the Employment Agreement (the "Agreement") entered into between Plaintiff and Callan, Plaintiff now seeks damages under several claims, many of which lack legal merit. Defendants respectfully move this Court to dismiss Counts I, II, III, IV, V, and VII of Plaintiff's Complaint, as well as Defendant Coldchain from this action altogether.

As to Count I (Breach of Contract), Plaintiff's claim is fatally flawed and must be dismissed. The Agreement explicitly permits Defendant to terminate Plaintiff's employment with or without cause, and such a termination does not, as a matter of law, constitute a breach of contract. Importantly, even if Count I survives, Plaintiff's damages, if any, should be limited to final compensation owed under the terms of the Agreement. Any broader claims for damages are unsupported by the allegations in the Complaint and the terms of the Agreement. Additionally, Count II (Declaratory Relief) should be dismissed as duplicative of Count I.

Regarding Count III (Defamation), Plaintiff's claim fails on several grounds. To prevail, Plaintiff must prove that Defendants made false and defamatory statements with actual malice. However, the statement at issue made in the SEC 8-K, and a purported press release, is not

defamatory.[1] This statement simply discloses Plaintiff's termination for cause, which is inherently non-specific and cannot reasonably be understood as defamatory. Even if there was a false statement, the statement is substantially true, and protected by a qualified privilege due to Defendants' duty and obligation to communicate the change in its CFO to investors and the public.

Count IV (Tortious Interference with Prospective Business Relationships) fails because Plaintiff does not state a plausible claim. Plaintiff does not adequately allege: (i) a reasonable probability of entering a specific business relationship; or (ii) any independently tortious or unlawful conduct. The vague and conclusory allegations of being "not hirable" are insufficient, as Plaintiff fails to identify any *specific* business relationships or job opportunities that were impacted by Defendants' actions.

As to Count V (Breach of Contract – Confidentiality), this claim must also be dismissed. The plain language of the Agreement imposes confidentiality obligations solely on Plaintiff. Even assuming Defendants were bound by similar provisions (which they are not), Plaintiff's claim rests solely on the general assertion that Defendants disclosed that Plaintiff's termination was "for cause." This is not a breach of any confidentiality obligation.

Plaintiff's Count VII (Negligent Infliction of Emotional Distress) is equally without merit. Under Texas law, claims for emotional distress arising out of an employment relationship are not cognizable. Plaintiff's emotional distress claim is directly tied to his employment and termination, making it legally insufficient.

---

[1] The Complaint references an undated press release as reporting alleged defamatory statements. However, the press release attached to the SEC 8-K does not mention Plaintiff at all, nor does it reference the termination. *See* Callan JMB Inc., Form 8-K (May 15, 2025), https://www.sec.gov/Archives/edgar/data/2032545/000164117225011058/form8-k.htm; Callan JMB Inc., Form 8-K, Exhibit 99.1, Press Release of the Company (May 15, 2025), https://www.sec.gov/Archives/edgar/data/2032545/000164117225011058/ex99-1.htm. In any case, the sole basis for Plaintiff's defamation claim is the use of the phrase "for cause"—the accurate and truthful description of Plaintiff's termination.

Finally, Defendant Coldchain must be dismissed from the action as there is no privity of contract between Coldchain and Plaintiff. As a non-party to the Agreement, Coldchain cannot be held liable for any alleged breaches. Moreover, Plaintiff cannot state a viable claim based on an Agreement to which Coldchain was not a signatory. Similarly, Plaintiff's tort claims also fail because the allegedly tortious statement giving rise to the claims was made by Defendant Callan, not Coldchain, and the Complaint does not plausibly allege otherwise.

For these reasons, Defendants respectfully request that the Court grant their Motion.

## FACTS ALLEGED IN THE COMPLAINT

From January 2024 through February 2025, Plaintiff served as an outsourced fractional CFO for Defendant Callan. Compl. ¶ 12. On or around October 1, 2024, Plaintiff entered into the Agreement with Defendant Callan to serve as Callan's CFO, effective February 6, 2025. *Id.* ¶¶ 12, 13. On October 24, 2024, the Agreement was amended to modify certain compensation terms, extend the employment term, and to provide for equity compensation upon Callan's Initial Public Offering ("IPO"). *Id.* ¶ 13. The Agreement included clauses and terms related to, *inter alia*, termination (including for cause and without cause), final compensation, equity compensation, severance, indemnification, confidentiality, governing law, and attorneys' fees. *Id.* ¶¶ 14, 15.

Defendant Callan went public in February 2025. *Id.* ¶ 18. Plaintiff served as Callan's CFO from February 6, 2025 through May 13, 2025. *Id.* ¶ 17. On May 13, 2025, Defendant Callan terminated Plaintiff's employment, citing performance issues in a written Termination Letter. *Id.* ¶¶ 17, 20–24. Around the time of Plaintiff's termination, Defendant Callan filed an SEC Form 8-K and a purported press release regarding Plaintiff's termination. *Id.* ¶ 25.

On October 6, 2025, Plaintiff commenced this action asserting claims for breach of contract, declaratory relief, defamation, tortious interference with prospective business relations,

equity-related relief, and negligent infliction of emotional distress. (Dkt. No. 1)

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action" or "naked assertions" without supporting facts are inadequate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Rather, a plaintiff bears the burden of pleading facts sufficient to "raise a right to relief above the speculative level." *Id.* at 555. While the Court should assume the truth of well-pleaded factual allegations, it should disregard "legal conclusion[s]," even when "couched as [ ] factual allegation[s]." *Id.*

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), as revised (Dec. 16, 2011) (quoting *Twombly*, 550 U.S. at 570). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613 (5th Cir. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Wright v. Dollar Tree Stores, Inc.*, No. 3:14-CV-01472-N, 2014 WL 11456816, at *4 (N.D. Tex. Sept. 16, 2014).

i.   Conflicts of Law

The Agreement provides a Governing Law provision, which provides: "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the state of Texas." *See* Agreement, § 31.  Because this provision is broad and applies not only to the interpretation of the Agreement but more broadly to the performance of the Agreement, Texas law shall be applied to all of Plaintiff's claims—the breach of contract claims as well as the tort claims.  *See, e.g., El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.* 344 F.Supp.2d 986, 989 (S.D. Tex. 2004) (holding a contract provision stating that Mexican law would apply to all disputes that "arise in connection with the performance of this Agreement," justified application to the tort claims because they concerned disputes that were connected with contract performance); *Quicksilver Resources, Inc. v. Eagle Drilling, LLC*, 792 F.Supp.2d 948, 953 (2011).

**ARGUMENT**

**POINT I**

**PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED
OR IN THE ALTERNATIVE, DAMAGES SHOULD BE LIMITED
TO FINAL COMPENSATION OWED, IF ANY**

As an initial matter, it is important to recognize that the Agreement explicitly granted Callan the right to terminate the Agreement, either with or without cause. A provision that provides an owner the right to terminate a contract with or without cause is often referred to as "termination for convenience" clause. *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 65–66 (Tex. App. 2011); *see also Smith v. Heritage Constructors, Inc.*, No. 06-19-00107-CV, 2020 WL 3967952 (Tex. App. July 14, 2020); *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 442 (Tex. App. 2004); 2 Philip Bruner & Patrick O'Connor, *Construction Law* § 5:270 (2002). The purpose of such a provision is to permit an "owner to unilaterally cancel its contractual

obligations [by terminating the contract] and still avoid committing a breach of contract which would expose it to damages." Bruner & O'Connor, supra, § 5:270. Under such a provision, Callan cannot have breached the contract by terminating it. *Gulf Liquids New River Project, LLC*, 356 S.W.3d at 66 ("[w]e agree that the act of terminating the contract is not itself a breach of contract by Gulf Liquids because it was merely exercising its right to terminate the contract with or without cause."). Here, the act of terminating the Agreement is not itself a breach of contract by Callan. *Id.* Accordingly, Count I fails, and should be dismissed.

To the extent the Court denies dismissal of Plaintiff's breach of contract claim, Plaintiff cannot recover damages under the severance provisions beyond any unpaid wages or benefits owed.[2] Pursuant to the terms of the Agreement, any potential bonuses are discretionary, and severance is only applicable and effected after the first anniversary of the Effective Date, *i.e.*, October 1, 2025.

Under § 5(c), titled "By Company for Cause," where an employee is terminated for cause, the employee is entitled to "Final Compensation," defined as:

> ... the amount equal to the sum of: (i) the Base Salary earned but not paid through the date of termination of employment, payable not later than the next scheduled payroll date, (ii) any business and related expenses and allowances incurred by Executive or to which Executive is entitled under Section 4(g) but unreimbursed on the date of termination of employment; *provided* that with respect to business expenses unreimbursed under Section 4(g), such expenses and required substantiation and documentation are submitted within one hundred eighty (180) days of termination in the case of termination on account of Executive's death, or thirty (30) days on account of termination for any reason other than death, and that such expenses are reimbursable under Company's applicable reimbursement policy, and (iii) any other supplemental

---

[2] Plaintiff's claim for declaratory relief (Count II) must be dismissed as duplicative of their breach of contract claims. *Berkseth-Rojas v. Aspen Am. Ins. Co.*, 2021 WL 2936033, at *7 (N.D. Tex. July 13, 2021) (dismissing declaratory judgment claims as duplicative of breach of contract claims); *Great Am. Ins. Co. v. Goin*, 2017 WL 4238698, at *4 (N.D. Tex. Sept. 25, 2017) (rejecting declaratory judgment claims seeking the resolution of issues that are the mirror image of other claims).

> compensation, insurance, retirement or other benefits due and
> payable or otherwise required to be provided under Section 4 in
> accordance with the terms and conditions of the applicable plan or
> agreement.

*See* Agreement, § 11(k).

Section 5(d), termination "By Company Other than for Cause or by Executive for Good Reason" notes:

> Company may terminate Executive's employment thereunder other
> than for Cause at any time upon thirty (30) days' written notice to
> Executive and Executive may terminate Executive's employment
> hereunder for Good Reason at any time upon thirty (30) days'
> written notice to Company.
>
> (i) In the event of a termination of Executive's employment under
> this Section 5(d), <u>in addition to the Final Compensation</u>, Executive
> shall receive:
>
>> (1) payment of applicable Base Salary for the period of (a) six
>> (6) months from the date of termination, <u>when the said
>> termination is effected after first anniversary of the Effective
>> Date</u>, or (b) <u>twelve (12) months from the date of termination,
>> when the said termination is effected after second anniversary of
>> the Effective Date.</u>

(emphasis added).

As a result of the explicit language contained in the Agreement, even if Plaintiff's termination occurred under Section 5(d) ("By Company Other than for Cause or by Executive for Good Reason"), Plaintiff would not be entitled to severance pay or any other compensation beyond the Final Compensation, if any, which is limited to unpaid wages and benefits accrued up to the date of termination, because the termination occurred prior to the first anniversary of the Effective Date. This limitation is consistent with the principle that when an agreement is explicit in its terms, the parties are bound by those terms and claims for damages outside the scope of the agreement must be excluded. *Gulf Liquids New River Project, LLC*, 356 S.W.3d at 67. Accordingly, at a

minimum, the damages attributable to Plaintiff's breach of contract claim (Count I), should be limited to any Final Compensation owed by Defendants to Plaintiff. *See LeBlanc v. Bedrock Petroleum Consultants LLC*, No. CV H-20-3476, 2021 WL 3884265, at *6 (S.D. Tex. Jun. 3, 2021) (holding "it is clear from Plaintiff's pleadings that LeBlanc was not entitled to a retention bonus under the unambiguous language of Section 2.07 of the MIPA"); *see also Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 162 (Tex.2003) (holding, even if insurer breached agreement, insured only entitled to remedies set forth in contract); *President Container Group II, LLC v. Systec Corporation,* 467 F.Supp.3d 158 (2020) (Court dismisses Plaintiff's breach of contract claim to the extent it seeks damages excluded by the provisions of the agreement.); *Payne v. Enable Software, Inc.*, 229 A.D.2d 880, 882, 645 N.Y.S.2d 916, 917 (1996).

## POINT II

## PLAINTIFF'S CLAIM FOR DEFAMATION SHOULD BE DISMISSED

Plaintiff's claim for defamation (Count III) fails as a matter of law and should be dismissed. To establish a defamation claim, Plaintiff must show, at a minimum, that: (i) Defendants published a statement of fact; (ii) the statement referred to Plaintiff; (iii) the statement was defamatory; (iv) the statement was false; and (v) Defendants acted with negligence or actual malice regarding the truth of the published statement. *WFAA-TV v. McLemore*, 978 S.W.2d 568, 571, 41 Tex. Sup. Ct. J. 1394 (Texas 1998). Plaintiff's defamation claim is based solely on the truthful statement made in the SEC 8-K filing and purported press release that Plaintiff was terminated "for cause."[3]

---

[3] The SEC 8-K contained the following factually correct statement:

> Effective as of May 13, 2025, the Company terminated Chief Financial Officer, Jeffrey A. Appleman, effective immediately. Mr. Appleman was terminated 'for cause' in accordance with the terms of his Employment Agreement dated October 1, 2024, as amended (the "Appleman Employment Agreement"). Mr. Appleman's termination was not related to the Company's financial or operating results or to any disagreements or concerns regarding the Company's financial or reporting practices. Mr. Appleman will be entitled to any payments in connection with the termination of his employment, as provided for in and under the Appleman Employment Agreement.

As an initial matter, "[t]he threshold issue of whether the words used are capable of a defamatory meaning is a question of law for the court." *Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 199 (Tex. App. 2003). In Texas, the Courts "construe the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement" and statements "may be *false, abusive, unpleasant, or objectionable to the plaintiff*, but still not defamatory in light of the surrounding circumstances." *Izaguirre v. Aguilar*, No. 13-19-00225-CV, 2021 WL 727017 at *3 (Tex. App. Feb. 25, 2021) (emphasis added).

Here, the allegedly defamatory statements are not capable of defamatory meaning because statements concerning an employee's termination or work performance are inherently non-specific and not reasonably understood as defamatory. *See id.; see also Einhorn v. LaChance*, 823 S.W.2d 405, 410 (Tex. App. 1992) (finding the statement that an employee was fired for reasons relating "solely to work performance" was nonspecific and was not capable of defamatory meaning); *Henriquez v. Cemex Mgmt, Inc.*, 177 S.W.3d 241, 252 (Tex. App. 2005) ("[T]hese statements did not contain specific reasons as to why Henriquez was being fired. Thus, they cannot be considered defamatory as a matter of law."); *Ferguson v. Hilton Hotels Corp.*, No. CIV.A. H–09–4114, 2011 WL 1485680, at *7 (S.D. Tex. Apr. 19, 2011) ("Any statements that Hilton made to the EEOC about Ferguson being fired were not capable of defamatory meaning because a statement that an employee was fired based on work performance is nonspecific and not reasonably capable of defamatory meaning."). Similarly, merely announcing that Plaintiff was terminated "for cause," and nothing more, cannot be deemed to be defamatory.

Moreover, Texas courts have routinely held that "accusing someone of doing that which they had the right to do is not defamatory." *See Izaguirre*, 2021 WL 727017, n. 3; *see also Means*

*v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App. 2010) ("Thus, it is not defamatory to accuse a person of doing that which he has a legal right to do."); *Associated Press v. Cook*, 17 S.W.3d 447, 456, n. 8 (Tex. App. 2000) ("[E]xercising a legal right is not defamatory as a matter of law."). Here, pursuant to the terms of the Agreement, Defendant Callan and Williams were legally entitled to terminate Plaintiff's employment.

Even if Plaintiff were able to demonstrate that Defendants published a false statement in the SEC 8-K filing and the accompanying press release (which did not refer to Plaintiff at all), such statement would still be protected by the doctrine of qualified privilege, which shields certain communications from defamation claims under specific circumstances. As established in *Hurlbut v. Gulf Atl. Life Ins. Co.*, qualified privileges "arise out of the occasion upon which the false statement is published." 749 S.W.2d 762, 768 (Tex. 1987). The privilege is designed to encourage open communication on matters of public or business interest, even if the statements made are later found to be false.

To claim the protection of a qualified privilege, the statement must: (i) be made without actual malice; (ii) concern a subject matter that is of sufficient interest to the author or be in reference to a duty the author owes; and (iii) be communicated to another party having a corresponding interest of duty. *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 99 (Tex. App. 2003).[4] Here, the economic reality of Plaintiff's termination does not, and cannot, support actual malice on the part of the Defendants. Plaintiff's termination, whether for cause or otherwise, did not serve Callan in any way, as under the Agreement, the Final Compensation would remain the same. In addition, having vested time and money in training Plaintiff while a fractional or temporary CFO, Defendant Callan and Williams had every motive and incentive *not* to terminate

---

[4] *See also Loughlin v. Goord*, 558 F.Supp.3d 126 (2021) (finding qualified privilege for SEC filings based on common interest and legal duty principles).

Plaintiff. Moreover, Defendants had a legitimate business interest and importantly, a legal obligation to disclose the change in the company's CFO to a range of parties, including investors, the SEC, and the general public. *See* SEC Form 8-K, Item 5.02(b). Such statutorily required disclosures are necessary to ensure transparency and proper communication with stakeholders. The responsibility to make such announcements is a duty that public companies owe to their shareholders and regulatory authorities, further supporting the application of the qualified privilege. Finally, a qualified privilege can exist even when the truth of the statement is disputed. *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 511 (Tex. App. 2007). Here, not only did Defendants merely announce the truth—that Plaintiff was terminated for cause—they were required to do so by statute.

Accordingly, Count III should be dismissed.

## POINT III

### COUNT IV FOR TORTIOUS INTERFERENCE <u>WITH PROSPECTIVE BUSINESS RELATIONSHIPS SHOULD BE DISMISSED</u>

Plaintiff's claim for tortious interference with prospective business relationships (Count IV) cannot be sustained because Plaintiff does not plausibly allege either: (i) a reasonable probability of entering a specific business relationship; or (ii) any independently tortious or unlawful conduct.

"To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury;

and (5) the plaintiff suffered actual damage or loss as a result." *Stone v. FINRA*, 694 F. Supp. 3d 774, 786 (E.D. Tex. 2023) citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted).[5]

Similar to the Plaintiff here, in *Stone*, the Plaintiff argued that his prospects of future business relationships were interfered with, as his reputation was harmed. *Stone*, 694 F. Supp. 3d at 789. The Court dismissed the claim, holding that "Plaintiff fails to sufficiently plead the 'reasonable probability' element, as Plaintiff does not 'describe the specifics of a proposed agreement that never came to fruition.'" *Stone*, citing *Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734-SDJ, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021) (quoting *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020)) (internal quotations omitted); *see also I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 WL 3086035, at *3 (N.D. Tex. July 20, 2017) (finding the plaintiff failed to plead tortious interference with prospective business relationships claims because the plaintiff "merely points to 'unspecified individuals' and 'some unspecified business relationship'" in relation to allegedly disparaging comments made on a conference call).

Here, Plaintiff similarly only alleges, in the most conclusory manner, that he is "not hirable" but fails to allege, as he must, the specifics of any concrete job offer or proposed agreement.

Accordingly, Count IV of the Complaint must be dismissed.

---

[5] New York law follows substantially the same standards, requiring a plaintiff to identify specific prospective business relationships and wrongful means used to interfere with those relationships. *See 684 East 222nd Realty Co., LLC v. Sheehan*, 185 A.D.3d 879 (2020)*; 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247 (2d Cir. 2015).

## POINT IV

## THE PLAIN LANGUAGE OF THE AGREEMENT
## ESTABLISHES THAT COUNT V MUST BE DISMISSED

Plaintiff's claim for breach of contract as to confidentiality (Count V) cannot be sustained

as the plain language of the Agreement imposes confidentiality obligations solely on Plaintiff.

Plaintiff's Count V is brought pursuant to § 29 of the Agreement which provides in its entirety the

following:

> Confidentiality. The Parties acknowledge and agree that this
> Agreement and each of its provisions are and shall be treated strictly
> confidential. **During the Term and thereafter, Executive shall not**
> **disclose any terms of this Agreement to any Person or entity**
> **without the prior written consent of Company**, with the exception
> of Executive's tax, legal or accounting advisors or for legitimate
> business purposes of Executive, or as otherwise required by law.

(emphasis added).

It is clear that the confidentiality provision only imposes confidentiality provisions on

Plaintiff (Executive) and that the Agreement contains no corresponding obligation on Defendants,

and thus, Plaintiff cannot plausibly allege that the Defendants breached the confidentiality

provisions. Notably, even if the confidentiality provision extended to Defendants, which it does

not, the entirety of Count V is based on the sole allegation that "[Defendants] publiciz[ed] in the

press that Plaintiff was terminated "For Cause" and [] otherwise disclos[ed] non-required, harmful

information in external communications." Plaintiff did not disclose any terms of the Agreement

other than stating that Plaintiff was terminated "for cause." Indeed, Defendants did not disclose

how "for cause" was defined under the Agreement. Moreover, despite alleging that he had been

damaged by the mere reference to the Agreement, Plaintiff elected to attach the Agreement as an

exhibit to the Complaint and file it publicly. Accordingly, Count V should be dismissed.

# POINT V

## COUNT VII – NEGLIGENT INFLICTION
## OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW

Plaintiff's claim for negligent infliction of emotional distress (Count VII) fails as a matter of law because under Texas law, claims for emotional distress arising out of an employment relationship are not cognizable. *See Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175 (5th Cir. 1992); *Conaway v. Control Data Corp.*, 955 F.2d 358 (5th Cir. 1992); *see also Fiorenza v. First City Bank-Cent.*, 710 F. Supp. 1104, 1105 (E.D. Tex. 1988) (holding "[t]he court will not recognize [negligent infliction of emotional distress] as a separate cause of action.").[6] There can be no doubt that Plaintiff's claim for negligent infliction of emotional distress stems from and arises out of his employment with Callan. All counts and allegations contained in the Complaint stem from Plaintiff's assertion that he was improperly terminated and the subsequent announcement of that termination. Accordingly, Count VII should be dismissed.

# POINT VI

## DEFENDANT COLDCHAIN SHOULD BE DISMISSED FROM THIS ACTION

Finally, Defendant Coldchain must be dismissed from this action. First, Coldchain must be dismissed from all claims arising under the Agreement because there is no privity of contract between Plaintiff and Coldchain. As a non-party to the Agreement, Coldchain cannot be held liable for any alleged breaches, and Plaintiff cannot state a plausible claim based on the terms of a contract to which Coldchain was not a signatory. *Martin v. Orbital Energy Grp., Inc.*, No. 3:22-CV-1968-B, 2023 WL 2169909 (N.D. Tex. Feb. 22, 2023) (dismissing breach of contract claim against non-party to employment agreement).

---

[6] *See also Giordano v. Gerber Scientific Products, Inc*., 24 Fed.Appx. 79 (2001)*; Offor v. Mercy Medical Center,* 171 A.D.3d 502 (2019) (dismissed negligent infliction of emotional distress claim where employee did not allege employer owed a duty separate from its general obligations as an employer).

Second, Plaintiff's tort claims against Coldchain also fail because the allegedly tortious statements giving rise to the claims were made by Defendant Callan, a public entity required to file the SEC 8-K filing. Coldchain did not make or issue any such statements. Nor importantly, does the Complaint plausibly allege otherwise.

Defendant Coldchain should be dismissed from this action with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendant's Motion to Dismiss in its entirety.

Dated: New York, New York
      January 30, 2026

                                Respectfully submitted,

                                SICHENZIA ROSS FERENCE CARMEL LLP

By: _____
                                Andrew B. Zinman, Esq.
                                Wynee Ngo, Esq.
                       1185 Avenue of the Americas, 31st Floor
                       New York, New York 10036
                       (212) 930-9700
                       azinman@srfc.law
                       wngo@srfc.law

                       *Attorneys for Defendants*