UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JEFFREY APPLEMAN, CPA,

                                Case No.: 2:25-cv-05593 (JMW)

               Plaintiff,

     -against-

CALLAN JMB INC., COLDCHAIN TECHNOLOGY
SERVICES, LLC, and WAYNE WILLIAMS, in his
individual and professional capacities,

               Defendants.
-------------------------------------------------------------------x


# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS THE COMPLAINT

SICHENZIA ROSS FERENCE CARMEL LLP
*Attorneys for Defendants*
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................ 1

**ARGUMENT** ........................................................................................................... 2

    **POINT I** ............................................................................................................ 2

        PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED
        OR IN THE ALTERNATIVE, DAMAGES SHOULD BE LIMITED
        TO FINAL COMPENSATION OWED, IF ANY ......................................................... 2

    **POINT II** ........................................................................................................... 3

        COUNT III FOR DEFAMATION SHOULD BE DISMISSED ..................................... 3

    **POINT III** .......................................................................................................... 6

        COUNT IV FOR TORTIOUS INTERFERENCE
        WITH PROSPECTIVE BUSINESS RELATIONSHIPS SHOULD BE DISMISSED ....... 6

    **POINT IV** ......................................................................................................... 7

        THE PLAIN LANGUAGE OF THE AGREEMENT
        ESTABLISHES THAT COUNT V MUST BE DISMISSED .......................................... 7

    **POINT V** ........................................................................................................... 8

        COUNT VII – NEGLIGENT INFLICTION
        OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW .................................. 8

    **POINT VI** ......................................................................................................... 10

        DEFENDANT COLDCHAIN SHOULD BE DISMISSED FROM THIS ACTION ...... 10

    **CONCLUSION** ................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015)................................................................................. 6

*684 East 222nd Realty Co., LLC v. Sheehan*,
185 A.D.3d 879 (2020) .......................................................................................... 6

*Amaranth LLC v. J.P. Morgan Chase & Co.*,
71 A.D.3d 40, 888 N.Y.S.2d 489 (1st Dep't 2009) .............................................. 6

*Boehner v. Heise*,
734 F. Supp. 2d 389 (S.D.N.Y. 2010)................................................................... 4

*Brian v. Richardson*,
87 N.Y.2d 46 (1995) .............................................................................................. 3

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182 (2004) .............................................................................................. 6

*Chandok v. Klessig*,
632 F.3d 803 (2d Cir. 2011).................................................................................. 4

*Chang v. Fa-Yun*,
265 A.D.2d 265 (1st Dep't 1999) .......................................................................... 3

*Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*,
581 F. Supp. 3d 454 (E.D.N.Y. 2022), *aff'd*, 2024 WL 959619 (2d Cir. Mar. 6, 2024)................. 3

*Clinton's Ditch Co-op Co. v. N.L.R.B.*,
778 F.2d 132 (2d Cir. 1985).................................................................................. 11

*Dennis v. Napoli*,
No. 153857/2014, 2015 WL 4885340 (N.Y. Sup. Ct. Aug. 12, 2015)........................................ 8, 9

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
639 F.3d 557 (2d Cir. 2011).................................................................................. 3

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
669 F. Supp. 2d 405 (S.D.N.Y. 2009)................................................................... 4, 5

*Gardner v. Sensio Inc.*,
645 F. Supp. 3d 310 (S.D.N.Y. 2022)................................................................... 11

*Giordano v. Gerber Scientific Products, Inc.*,
24 Fed.Appx. 79 (2001) ................................................................................................ 8

*Golden v. Stiso*,
279 A.D.2d 607, 720 N.Y.S.2d 164 (2001) .................................................................. 4

*Guccione v. Hustler Mag., Inc.*,
800 F.2d 298 (2d Cir. 1986) .......................................................................................... 3

*Krumme v. WestPoint Stevens Inc.*,
238 F.3d 133 (2d Cir. 2000) .......................................................................................... 3

*Liberman v. Gelstein*,
80 N.Y.2d 429 (1992) .................................................................................................... 4

*Lively v. Wafra Inv. Adv. Group, Inc.*,
211 A.D.3d 432 (1st Dep't 2022) ............................................................................... 6, 7

*Loughlin v. Goord*,
558 F.Supp.3d 126 (2021) ............................................................................................. 3

*Master Group Glob. Co., Ltd. v. Toner.Com Inc.*,
No. 19-CV-6648, 2020 WL 5260581, (E.D.N.Y. Aug. 10, 2020),
*report and recommendation adopted*, 2020 WL 5259057 (E.D.N.Y. Sept. 3, 2020) .................... 3

*McGill v. Parker*,
179 A.D.2d 98, 582 N.Y.S.2d 91 (1st Dep't 1992) ...................................................... 6

*My Mavens, LLC v. Grubhub, Inc.*,
No. 20 CIV. 4657 (PGG), 2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023) ................... 10

*Offor v. Mercy Medical Center*,
171 A.D.3d 502 (2019) ................................................................................................. 8

*Pac. Carlton Dev. Corp. v. 752 Pac., LLC*,
62 A.D.3d 677, 878 N.Y.S.2d 421 (2009) ................................................................... 11

*PC-41 Doe v. Poly Prep Country Day Sch.*,
590 F. Supp. 3d 551 (E.D.N.Y. 2021) ...................................................................... 9, 10

*Pelkowski v. Hovermann*,
No. 20-CV-1845 (ENV)(RLM), 2021 WL 9032222 (E.D.N.Y. Sept. 9, 2021) ........... 6

*Stega v. N.Y. Downtown Hosp.*,
82 N.Y.S.3d 323 (2018) .............................................................................................. 3, 4

*Toker v. Pollak,*
405 N.Y.S.2d 211 (1978) .................................................................................................. 4

Defendants Callan JMB Inc. ("Callan"), Coldchain Technology Services, LLC ("Coldchain"), and Wayne Williams ("Williams") (collectively, "Defendants"), by and through their attorneys, Sichenzia Ross Ference Carmel LLP, respectfully submit this reply memorandum of law in further support of their motion (the "Motion") to partially dismiss the Complaint ("Compl.") (Dkt. No. 1) filed by Jeffrey Appleman ("Appleman" or "Plaintiff") under Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Defendants have moved this Court to dismiss Counts I, II, III, IV, V, and VII of Plaintiff's Complaint, as well as Defendant Coldchain from this action altogether. Plaintiff's opposition leaves little doubt that the Motion should be granted. The entirety of Plaintiff's claims rests on the erroneous assumption that his termination "for cause" was pretextual to avoid paying additional compensation. This unfounded conspiracy is belied by the Agreement's terms, which establish that Plaintiff was only entitled to his "Final Compensation," regardless of the manner of termination. As such, Plaintiff's supposition and allegation that Defendants acted with ill will or "malice" does not withstand scrutiny—Callan terminated Plaintiff for cause for no reason other than those facts set forth in his termination letter: his performance as CFO was grossly negligent. Any other conclusion simply is not based on logic or the facts. Accordingly, all claims fail as a matter of law. Additionally, Coldchain must be dismissed as there is no privity of contract between Coldchain and Plaintiff.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED
OR IN THE ALTERNATIVE, DAMAGES SHOULD BE LIMITED
TO FINAL COMPENSATION OWED, IF ANY**

Plaintiff's opposition simply misses the mark.  First, Plaintiff argues that "Defendants' breaches stem not from terminating the agreement, but from unlawfully terminating Plaintiff's employment 'for cause.'" This circular reasoning lacks logic; as set forth in the Motion, Defendants did not breach the Agreement.

Second, despite the Agreement's clear and unambiguous language precluding any severance and limiting damages to "Final Compensation," whether terminated "with cause" or "without," (*see* Motion pp. 6-8), Plaintiff premises his argument on pure speculation that "[he] would have been employed by the Defendants beyond his 1-year anniversary date." *See* Opp. p. 10.  This argument is illogical. The Agreement was effective February 6, 2025, and Plaintiff was terminated on May 13, 2025.  Even with 30-days' notice, there is no reasonable basis to argue that Plaintiff would have been employed on February 6, 2026—some nine (9) months later.

Plaintiff also conflates the 30-day notice to cure provision with his termination.  Under the Agreement, Plaintiff was entitled to 30-days' notice to cure *only* if terminated "for cause" as defined in paragraph 11(c)(i). However, Plaintiff was terminated under paragraph 11(c)(ii), which provides no notice to cure. *See* Agreement, ¶ 11. More importantly, had Plaintiff been terminated without cause, he was only entitled to receive 30-days' notice—not notice to cure—and would not have earned any potential severance, including any bonuses, *pro-rata* or otherwise.

Accordingly, if the Court does not dismiss Count I, Plaintiff is not entitled to severance or any other compensation beyond Final Compensation, if any, limited to unpaid wages and benefits

2

accrued up to termination, because termination occurred well prior to the first anniversary of the Effective Date.

## POINT II

## <u>COUNT III FOR DEFAMATION SHOULD BE DISMISSED</u>

Plaintiff's defamation claim is based solely on the truthful statement made in the SEC 8-K filing and press release[1] that Plaintiff was terminated "for cause." The statement cannot be defamatory because it is true.[2] *See Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) ("truth is an absolute, unqualified defense to a civil defamation action") (citation omitted); *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 581 F. Supp. 3d 454, 459 (E.D.N.Y. 2022), *aff'd,* 2024 WL 959619 (2d Cir. Mar. 6, 2024).[3] Even if Plaintiff could demonstrate Defendants published a false statement in the SEC 8-K filing and the accompanying press release (which did not reference Plaintiff), such statement would be protected by the doctrine of qualified privilege, which shields certain communications from defamation claims. *See Loughlin v. Goord*, 558 F.Supp.3d 126 (2021) (finding qualified privilege for SEC filings based on common interest and legal duty principles); *Stega v. N.Y. Downtown Hosp.*, 82 N.Y.S.3d 323, 332 (2018) ("[A] qualified

---

[1] Plaintiff attached as Exhibit C to the affidavit in support of his opposition a purported article that announced Plaintiff's termination.  This article was not published by Defendants, nor does Plaintiff argue otherwise.  Exhibit C is irrelevant and should be disregarded.

[2] Curiously, and perhaps tellingly, in two of the three cases cited by Plaintiff on page 14 of his opposition the court dismissed the defamation claim.  *See, e.g., Chang v. Fa-Yun*, 265 A.D.2d 265 (1st Dep't 1999); *Brian v. Richardson*, 87 N.Y.2d 46 (1995).

[3] Defendants concur with Plaintiff that New York law applies to Plaintiff's tort claims because New York law and Texas law are substantively similar. Absent such a conflict, a choice-of-law analysis is not required, and the Court should apply New York law. *See Master Group Glob. Co., Ltd. v. Toner.Com Inc.*, No. 19-CV-6648, 2020 WL 5260581, at *7 (E.D.N.Y. Aug. 10, 2020), *report and recommendation adopted*, 2020 WL 5259057 (E.D.N.Y. Sept. 3, 2020); *see also Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 566 (2d Cir. 2011) (citing *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000)) (Under New York choice of law rules, where the parties agree that New York law controls, explicitly or impliedly, this is sufficient to establish choice of law.).

privilege does provide an atmosphere in which a civic-minded citizen may, without fear, convey information . . . to the benefit of the public.") (quoting *Toker v. Pollak*, 405 N.Y.S.2d 211, 221 (1978)); *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992) ("The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded.").

Under New York law, "[a] qualified privilege may be overcome by a showing of either 'actual' malice (*i.e.*, knowledge of the statement's falsity or reckless disregard as to whether it was false) or of common-law malice." *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011). "Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (quoting *Golden v. Stiso*, 279 A.D.2d 607, 720 N.Y.S.2d 164, 165 (2001)). The burden of this showing is on Plaintiff. *See Boehner v. Heise*, 734 F. Supp. 2d 389, 401 (S.D.N.Y. 2010).

Plaintiff has not met his burden to establish actual or common-law malice. Instead, out of whole cloth and in mere conclusory allegations, Plaintiff alleges that Defendants acted with malice. Indeed, in his opposition, Plaintiff directs the Court to the specific paragraphs in which he argues that he has adequately pled Defendants' malice. *See* Opp. p. 16 ("Here, Plaintiff can establish— and has pleaded—<u>both</u> common law and actual malice (*See Comp. Par. 25-29; Par. 44-48; Par. 41-53.*"). However, a review of the relevant paragraphs (those that allege malice and not simply the purported falsity of the statement), clearly, and unquestionably, demonstrates the conclusory nature of the allegations. Specifically in those relevant paragraphs of the Complaint, Plaintiff alleges the following:

> ¶ 29: "Said statements were further made by Defendants at least with actual malice and reckless disregard for the truth";

¶ 47. "Defendants made and republished the statements with at least negligence, and on information and belief with common-law malice and/or constitutional actual malice—knowledge of falsity or reckless disregard for truth"; and

¶ 52: "Defendants' conduct was undertaken with malice and without justification, and directly caused the loss of those expectancies and other economic harm to Plaintiff".

It is clear that these allegations—the very ones that Plaintiff directs the Court to in support of his claim for defamation and of Defendants' purported malice—fail as a matter of law. *Fuji Photo Film U.S.A., Inc.* 669 F. Supp. 2d at 412.

To overcome this deficiency, Plaintiff futilely argues Defendants terminated him "to ensure Plaintiff's stock options did not vest." *See* Opp. p. 16. This fails for two reasons. First, the Complaint does not allege this—this fabricated pretext appears only in Plaintiff's opposition. Second, Plaintiff's argument is contradicted by the Complaint and Agreement. Plaintiff alleges the Agreement was amended "increasing to 100,000 stock options (instead of 50,000) on the first day of an Initial Public Offering [IPO] of Defendant Callan, with vesting quarterly," (*see* Compl. ¶ 13) and that "on or about February 5, 2025, [he] . . . received a Notice of Stock Option Grant from Defendant Callan, granting Plaintiff an option to purchase 15,000 shares at $4.00 per share, immediately vested" (*see* Compl. ¶ 16). The IPO occurred in February 2025, prior to Plaintiff's termination. *See* Compl. ¶ 18. Nowhere in the Complaint does Plaintiff allege that Callan terminated his employment to avoid the issuance of the options.

Defendants announced the truth—that Plaintiff was terminated for cause—as required by statute. The statement is protected by qualified privilege, and Plaintiff failed to adequately allege malice. Accordingly, Count III should be dismissed.

## COUNT IV FOR TORTIOUS INTERFERENCE
## WITH PROSPECTIVE BUSINESS RELATIONSHIPS SHOULD BE DISMISSED

Plaintiff's opposition does not refute that Count IV cannot be sustained because Plaintiff fails to plausibly allege either: (i) a reasonable probability of entering a *specific* business relationship; or (ii) independently tortious or unlawful conduct. Under New York law, interference with prospective economic relations requires either that the defendant acted solely to harm the plaintiff or employed wrongful means "amount[ing] to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004); *684 East 222nd Realty Co., LLC v. Sheehan*, 185 A.D.3d 879 (2020); *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247 (2d Cir. 2015). Although defamation can be a predicate act for a tortious interference claim (*see Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 888 N.Y.S.2d 489, 494 (1st Dep't 2009), because Plaintiff's defamation claim fails, his tortious interference claim fails as well, because Plaintiff has not alleged that Defendants acted solely to harm Plaintiff or employed wrongful means, and there is no underlying tort in which to premise the claim. *Pelkowski v. Hovermann*, No. 20-CV-1845 (ENV)(RLM), 2021 WL 9032222, at *8 (E.D.N.Y. Sept. 9, 2021); *see also Lively v. Wafra Inv. Adv. Group, Inc.*, 211 A.D.3d 432, 433 (1st Dep't 2022).

Even if the defamation claim survives, this claim fails because Plaintiff did not identify a *specific* business relationship. *See McGill v. Parker,* 179 A.D.2d 98, 105, 582 N.Y.S.2d 91, 95 (1st Dep't 1992) (dismissing claim where plaintiff pled "only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship").

Plaintiff's attempt to address this fatal failure, again, misses the mark. Plaintiff cites to ¶ 30 of the Complaint to purportedly establish the specificity required to maintain the tortious

interference with business relations claim. This paragraph alleges in relevant part: "Plaintiff's prior fractional-CFO firm (CFO Consulting Partners) declined to rehire him because, as they stated to Plaintiff, *prospective clients* would Google [Plaintiff] and see he had been "fired For Cause," thereby rendering Plaintiff "not hirable." This statement lacks requisite specificity—Plaintiff identifies no "prospective clients" that wouldn't hire Plaintiff, no terms of any potential agreement, or other specifics. "Prospective clients," and "Googling" Jeffrey Appleman, are precisely the speculative and generalized pleadings and allegations courts find insufficient. *Lively*, 211 A.D.3d at 434 (dismissing claim where plaintiff failed to allege "wrongful conduct directed at . . . prospective third parties.")

Plaintiff has merely alleged that he is "not hirable" but fails to allege, as he must, the specifics of any concrete job offer or proposed agreement. Accordingly, Count IV must be dismissed.

**POINT IV**

**THE PLAIN LANGUAGE OF THE AGREEMENT**
**ESTABLISHES THAT COUNT V MUST BE DISMISSED**

In support of Count V, Plaintiff tellingly, and intentionally or not, cites only a portion of § 29 of the Agreement, that "[t]he Parties acknowledge and agree that this Agreement and each of its provisions are and shall be treated strictly confidential," but ignores the most relevant and non-ambiguous sentence of the provision. The next sentence, unequivocally sets forth that: "[d]uring the Term and thereafter, *Executive shall not disclose any terms of this Agreement* to any Person or entity without the prior written consent of Company, with the exception of Executive's tax, legal or accounting advisors or for legitimate business purposes of Executive, or as otherwise required by law." *See* Agreement, § 29 (emphasis added). Plaintiff appears to hope that if he ignores the plain language of the Confidentiality provision, somehow, he can convince the Court that

Defendants breached the provision.  However, the strategy of "out of sight, out of mind," does not work here.  It is clear the provision imposes confidentiality duties only on Plaintiff (Executive)—the Agreement contains no corresponding obligation on Defendants. Thus, Plaintiff cannot plausibly allege the Defendants breached the confidentiality provisions.  Moreover, Defendants disclosed no terms of the Agreement other than stating that Plaintiff was terminated "for cause"—they did not disclose how "for cause" was defined.  Despite alleging damage from reference to the Agreement, Plaintiff attached the Agreement as an exhibit to the Complaint and opposition, filing it publicly. Accordingly, Count V should be dismissed.

**POINT V**

**COUNT VII – NEGLIGENT INFLICTION
OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW**

Count VII fails as a matter of law because claims for emotional distress arising out of an employment relationship are not cognizable. *See Giordano v. Gerber Scientific Products, Inc*., 24 Fed.Appx. 79 (2001); *Offor v. Mercy Medical Center,* 171 A.D.3d 502 (2019) (dismissing negligent infliction of emotional distress claim where employee did not allege employer owed a duty separate from its general obligations as an employer). Plaintiff's claim for negligent infliction of emotional distress undeniably arises from his employment with Callan—all counts and allegations contained in the Complaint stem from Plaintiff's assertion of improper termination and the subsequent, statutorily required, announcement of that termination.

Citing to a single New York case—*Dennis v. Napoli*—Plaintiff argues his claim for negligent infliction of emotional distress should survive because Defendants' conduct here "has been so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," and therefore the conduct is "extraneous to the employment Agreement." No. 153857/2014, 2015 WL 4885340, at *1 (N.Y.

8

Sup. Ct. Aug. 12, 2015). This argument strains credulity. Indeed, the *Dennis* case and the extreme conduct therein, shows why Plaintiff's Count VII should be dismissed. In *Dennis*, the conduct involved an 18-month affair between the plaintiff and a law partner at her firm, ending when the partner's wife discovered the affair. Among other allegations, plaintiff claimed that the wife:

> sent numerous letters, emails, texts and Facebook messages to plaintiff's family, friends, employers and future employers defaming plaintiff as well as posting vicious and insulting comments on plaintiff's Facebook picture . . . [T]he complaint alleges . . . within a month of plaintiff arriving at her new job in Houston, Marie sent several identical letters to the wives and family members of the partners at her current employer, wherein she, among other things, referred to plaintiff as a "sexual predator" and "sex addict," suggesting [she had] multiple affairs and warning the recipients that they should not let their husbands near plaintiff.

> Additionally, the complaint alleges that on January 25, 2014, Marie posted derogatory comments under photos on plaintiff's Facebook page. For example, one photo depicted plaintiff with six of her classmates from the Trial Lawyers College. Marie commented on the photo, "Vanessa is a slut." Another photo depicted plaintiff with twelve of her classmates at the Trial Lawyers College and three of plaintiff's professors. Marie commented on that photo, "Vanessa was fired from her job at Napoli Bern for being a slut!"

*Id*.

Defendants agree that such conduct in *Dennis* is extreme, outrageous, and goes "beyond all possible bounds of decency." The same cannot be said of Defendants' conduct here. For Plaintiff to assert that Defendants conduct—terminating Plaintiff "with cause" and filing a statutorily required SEC 8-K statement and related press release—meets this burden, is as implausible as it is frivolous.

Lastly, Plaintiff's negligent infliction of emotional distress claim is duplicative of his defamation claim. Where alleged emotional distress flows from the same conduct underlying another tort claim, the negligent infliction claim must be dismissed as duplicative. *See PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 570 (E.D.N.Y. 2021) (dismissing negligent infliction of emotional distress claim as duplicative, holding "[u]nder New York law, claims are

duplicative when both arise from the same facts and seek the identical damages for each alleged breach.") (citation omitted).

Accordingly, Count VII should be dismissed.

**POINT VI**

**<u>DEFENDANT COLDCHAIN SHOULD BE DISMISSED FROM THIS ACTION</u>**

Finally, Coldchain must be dismissed from this action. Regarding the tort claims, the allegedly tortious statements giving rise to the claims were made by Callan, *a public entity required to file the SEC 8-K filing*. Coldchain made no such statement, nor importantly, does the Complaint plausibly allege otherwise. The conclusory allegations contained in the Complaint that Coldchain was Plaintiff's "joint employer" (Compl. ¶ 7), and that somehow the Agreement was a valid contract between Plaintiff and both Callan and Coldchain (Compl. ¶ 37)—belied by the Agreement's terms—do not change this conclusion.[4]

Likewise, Plaintiff's attempt to hold Coldchain, a non-party to the Agreement, liable for any purported breaches of the Agreement must fail. First, Plaintiff improperly relies on Plaintiff's W-2 Statement from 2025, attached as Exhibit B, in support of his conjecture that Coldchain was Plaintiff's joint employer. However, Exhibit B was not attached to the Complaint, and nowhere in the Complaint did Plaintiff allege that Coldchain paid Plaintiff's salary. It is improper for Plaintiff to include and rely on it here in his opposition, and the Court should disregard it. *See My Mavens, LLC v. Grubhub, Inc.*, No. 20 CIV. 4657 (PGG), 2023 WL 5237519, at *3 (S.D.N.Y. Aug. 14, 2023) (holding because the Amended Complaint does not "rel[y] heavily upon [the March 23, 2017 email's] terms and effect," the email is not "integral to the [Amended Complaint],"

---

[4] It should be noted that these two paragraphs—¶¶ 7 and 37—contain the only (conclusory) allegations in support of his unfounded claim and position that Coldchain is a proper party to this action. Indeed, these are the only two paragraphs cited by Plaintiff in his opposition for this position.

and therefore, "may not be considered in connection with Defendants' motions to dismiss.") (citations and quotations omitted). Second, the same conclusory allegations that torpedoed Plaintiff's tort claims against Coldchain, similarly doom his breach of contract claim.

In any event, Coldchain cannot be held liable for any alleged breaches, and Plaintiff cannot state a plausible claim based on the terms of a contract to which Coldchain was not a signatory. Indeed, one of Plaintiff's own cited cases holds just this. *See Pac. Carlton Dev. Corp. v. 752 Pac., LLC*, 62 A.D.3d 677, 678, 878 N.Y.S.2d 421 (2009) (dismissing breach of contact claim, holding "Ratner was not a party to the contract alleged to have been breached. Accordingly, he cannot be bound by the contract.").[5]

Similarly, Plaintiff's cited case for "joint employer" status is inapposite as that case concerns a contractor-sub-contractor relationship. *See Clinton's Ditch Co-op Co. v. N.L.R.B.*, 778 F.2d 132 (2d Cir. 1985). Moreover, and importantly, the court in *Clinton's Ditch* dismissed the "joint employer" argument: "[w]e conclude that there is insufficient evidence to support the board's determination that Clinton's Ditch and Fairfield were joint employers." *Id.* at 140. Likewise, here, the Court should summarily dismiss Plaintiff's argument.

Accordingly, Defendant Coldchain should be dismissed from this action with prejudice.

---

[5] Another case cited by Plaintiff at pg. 23 of his opposition doesn't concern a breach of contact claim, but rather a breach of an implied warranty of merchantability. Even there, however, the court dismissed for lack of privity. *See Gardner v. Sensio Inc.*, 645 F. Supp. 3d 310, 320 (S.D.N.Y. 2022) (dismissing claim, holding "[a]s a result, plaintiff's claim for breach of the implied warranty of merchantability is dismissed for lack of privity."). Indeed, neither the *Pac. Carlton* nor *Gadner* case support the argument set forth in Plaintiff's opposition that Coldchain should remain a defendant in this case.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendant's Motion to Dismiss in its entirety.

Dated: New York, New York
March 27, 2026

Respectfully submitted,

SICHENZIA ROSS FERENCE CARMEL LLP

By: _____
Andrew B. Zinman, Esq.
Wynee Ngo, Esq.
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700
azinman@srfc.law
wngo@srfc.law

*Attorneys for Defendants*