**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

JEFFREY APPLEMAN, CPA,

        *Plaintiff,*


      -against-

CALLAN JMB INC., COLDCHAIN TECHNOLOGY
SERVICES, LLC, and WAYNE WILLIAMS, in his
individual and professional capacities,

        *Defendants*.

-------------------------------------------------------------------X

FILED
CLERK
**4/15/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM**
**AND ORDER**

25-CV-05593 (JMW)

**A P P E A R A N C E S :**

Eric M. Sarver
**Sarver Law Firm, PLLC**
106 West 32nd Street, Suite 147
New York, NY 10001
*Attorney for Plaintiff*

Andrew Brett Zinman
Wynee Ngo
**Sichenzia Ross Ference Carmel LLP**
1185 Avenue of the Americas, Ste 31st Floor
New York, NY 10036
*Attorneys for Defendants*

**WICKS**, Magistrate Judge:

Plaintiff Jeffrey Appleman, CPA ("Plaintiff") commenced this action against Defendants

Callan JMB Inc. ("Callan"), Coldchain Technology Services, LLC ("Coldchain"), and Wayne

Williams ("Williams" and collectively, "Defendants"), alleging various claims of breach of

contract, declaratory relief, defamation, tortious interference with business relations, and

negligent infliction of emotional distress, stemming from an alleged wrongful termination of

1

Plaintiff, the former Chief Financial Officer of Callan. (*See generally*, ECF No. 1.) Now before the Court is Defendants' motion for partial dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 21-22), Plaintiff's opposition (ECF Nos. 23-24), and Defendants' reply (ECF No. 25). For the reasons set forth below, Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

### I.      Factual Background

The Court details the following allegations from the Complaint. which are assumed true for the purposes of this motion to dismiss. (ECF No. 1.) Plaintiff's suit arises from his term of employment as the Chief Financial Officer ("CFO") of Callan. (*Id.* at ¶ 1.) Plaintiff began his employment with Callan in January of 2024 as a fractional CFO before becoming their full-time CFO on February 6, 2025. (*Id.* at ¶ 12.) The parties executed Plaintiff's employment agreement ("Employment Agreement") on October 1, 2024. (*Id.* at ¶ 13.) The Employment Agreement stated that a "For Cause" termination of the Plaintiff's employment must be accompanied by written notice and a 30-day period for the Plaintiff to cure any of his employment issues. (*Id.* at ¶ 14.) The Agreement additionally granted Plaintiff's rights to any unpaid compensation or bonuses at termination. (*Id.*)

During Plaintiff's tenure as CFO, Callan successfully "went public" and passed audits without incident. (*Id.* at ¶¶ 18-19.) However, on May 13, 2025, Callan terminated Plaintiff "'For Cause,' effective immediately". (*Id.* at ¶ 21.) Callan justified the "For Cause" termination by listing Plaintiff's performance issues. (*Id.* at ¶¶ 20, 23.) In particular, Defendants stated that Plaintiff "engaged in serious wrongdoing, gross negligence, incompetence, or unlawful activities, as would normally warrant termination of a company's CFO 'For Cause.'" (*Id.* at ¶ 28.)

However, Plaintiff alleges that these performance issues were either pre-existing, out of his control, or part of his recommendations to senior leadership for corrective action, which were ultimately ignored. (*Id*. at ¶ 20.) He further alleges that Callan gave these justifications so they could terminate him "For Cause" and violate the Employment Agreement. (*Id.* at ¶ 21.).

The relevant provisions of the Employment Agreement are:[1]

> Termination of Employment; Severance Benefits. Notwithstanding the provisions of Section 2, the Executive's employment hereunder shall terminate under the following circumstances:
>
> ***
>
> (c) By Company for Cause. Company may terminate Executive's employment hereunder for Cause, as defined in Section 11(c), at any time upon notice to Executive setting forth in reasonable detail the nature of such Cause. Upon the giving of notice of termination of Executive's employment hereunder for Cause, Executive will receive Executive's Final Compensation. Except as provided herein, Company will have no further obligation to Executive upon termination of Executive's employment under this Section 5(c). Any notice of termination of Executive's employment hereunder for Cause, or any notice to Executive regarding any event, condition or circumstance that, if not cured, if applicable, in accordance with the above, could give rise to a termination of Executive's employment hereunder for Cause, shall set forth in detail the applicable event(s), condition(s) or circumstance(s) constituting reason(s) or potential reason(s) for such termination hereunder.

(*Id.* at Exhibit A, § 5(c).)

> Definitions. Words or phrases that are initially capitalized or within quotation marks shall have the meanings provided in this Section 11 and as provided elsewhere. For purposes of this Agreement, the following definitions apply:

---

[1] Generally, on a motion to dismiss, the Court is confined to review only "the allegations contained within the four corners of [the] complaint." *Kernan v. New York State Dep't of Fin. Servs.*, No. 13-CV-3196(JS)(ARL), 2015 WL 13741858, at *4 (E.D.N.Y. July 15, 2015) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F. 3d 67, 71 (2d Cir. 1998)). Yet, this "include[s] any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken." *Id.* (collecting cases); *see also Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (internal quotations omitted) (Courts "may review only a narrow universe of materials," such as "facts stated [in] the complaint, documents appended to the complaint or incorporated ... by reference, ..." [and] "document[s] not expressly incorporated by reference in the complaint [that are] nevertheless 'integral' to the complaint.") Here, the Employment Agreement is attached to the Complaint.

***

> (c) "Cause" means if Executive is discharged by Company on account of the occurrence of one or more of the following events: (i) Executive's continued refusal or failure to perform (other than by reason of Disability) Executive's material duties and responsibilities to Company if such refusal or failure is not cured within thirty (30) days following written notice of such refusal or failure by Company to Executive, or Executive's continued refusal or failure to follow any reasonable lawful direction of the Board if such refusal or failure is not cured within thirty (30) days following written notice of such refusal or failure by Company to Executive; (ii) willful, grossly negligent or unlawful misconduct by Executive which causes material harm to Company or its reputation; (iii) the Company is directed in writing by regulatory or governmental authorities to terminate the employment of Executive or Executive engages in activities that: (i) are not approved or authorized by the Board, and (ii) cause actions to be taken by regulatory or governmental authorities that have a material adverse effect on Company;or (iv) a conviction, plea of guilty, or plea of nolo contendere by Executive, of or with respect to a criminal offense which is a felony or other crime involving dishonesty, disloyalty, fraud, embezzlement, theft, or similar action(s) (including, without limitation, acceptance of bribes, kickbacks or self-dealing), or the material breach of Executive's fiduciary duties with respect to Company.

(*Id.* at § 11(c).)

The same day that Plaintiff was terminated, Callan published a press release and an SEC Form 8-k announcing that he was fired "For Cause". (*Id*. at ¶ 29.) Plaintiff has been seeking employment since, but his efforts have been unsuccessful. (*Id*. at ¶ 30.) He alleges that his previous employer would not rehire him because the published "For Cause" termination renders him un-hirable. (*Id.* at ¶ 30.) Plaintiff's counsel has demanded that the Defendants remove the publication, but they have refused to do so. (*Id.* at ¶¶ 33-34.)

Since the termination date, Defendants have refused to pay him multiple bonuses, other compensation and benefits, and outplacement services that the Employment Agreement entitles him to. (*Id.* at ¶ 31.) He additionally alleges that they have not honored both their indemnification and confidentiality obligations. (*Id.* at ¶¶ 31-32.) Due to this conduct, Plaintiff

4

has to date suffered damages including loss of compensation, benefits as well as reputation harm and emotional distress. (*Id.* at ¶ 35.)

## II.    <u>Procedural Background</u>

Plaintiff commenced this action on October 6, 2025. (ECF No. 1.)  As jurisdiction was based on diversity in this case, the Court required a supplemental letter establishing that diversity jurisdiction exists. (*See* Electronic Order dated 10/7/2025.) Plaintiff complied (*see* ECF No. 8), and the Court found at upon review of the supplemental letter, it appeared that subject matter jurisdiction here, which is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332, was satisfied at this time. (*See* Electronic Order dated 10/16/2025.) An initial conference was held on December 15, 2025, and the Court entered a Rule 26(f) Scheduling Order. (ECF No. 16.) Shortly thereafter, Defendants requested a pre-motion conference to partially dismiss the Complaint (ECF No. 17), which Plaintiff opposed (ECF No. 19.) At the same time, the parties consented to the undersigned for all purposes. (ECF Nos. 18, 20.) The Court waived the pre-motion conference requirement and set a briefing scheduling. (Electronic Order dated 12/21/2025.) On January 30, 2026, Defendants filed their moving papers pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 21-22), Plaintiff filed opposition (ECF No. 23-24), and Defendants filed their reply (ECF No. 25). Oral argument was held on April 10, 2026. (*See* Electronic Order dated 4/10/2026.)

## <u>THE LEGAL FRAMEWORK</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also CompassCare v. Hochul*, 125 F.4th 49, 56-57 (2d Cir. 2025) (quoting *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Annabi v. New York Univ.*, No. 24-cv-2601, 2025 WL 1066083, at *1 (2d Cir. Apr. 9, 2025) (quoting *Iqbal*, 556 U.S. at 678). To that end, complaints are properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. Put differently, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. … Factual allegations must be enough to raise a right to relief above the speculative level. To survive dismissal, a complaint must provide enough facts to state a claim to relief that is plausible on its face." *Go New York Tours Inc. v. Gray Line New York Tours, Inc.*, No. 24-cv-2392, 2025 WL 947083, at *2 (2d Cir. Mar. 27, 2025) (quoting *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)).

**DISCUSSION**

Defendants move to dismiss the Complaint on the grounds that (i) the Employment Agreement permitted the Defendants to terminate Plaintiff with or without cause, (ii) the Declaratory Relief sought is duplicative of the breach of contract claim, (iii) the publication regarding Plaintiff's termination was not defamatory, but rather simply discloses the Plaintiff's termination, (iv) Plaintiff fails to adequately plead tortious interference with prospective business relationships, (v) the Agreement only imposes confidentiality obligations on the Plaintiff, and (vi) the emotional distress claim are directly tied to Plaintiff's employment, so such a claim is not cognizable. (ECF No. 22 at 7-8.) Simply put, Defendants move to dismiss all the claims apart from Count VI of the Complaint, which alleges equity-related relief (breach of contract). (ECF No. 1 at 17.) For reference, the Court outlines which Counts are brought against which Defendant:

(i) COUNT I – BREACH OF CONTRACT (Employment Agreement) (Against Defendants Callan and Coldchain)

(ii) COUNT II – DECLARATORY JUDGMENT (28 U.S.C. § 2201) (Against Defendants Callan and Coldchain)

(iii) COUNT III – DEFAMATION (Per Se and Per Quod) (Against All Defendants)

(iv) COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS (Against All Defendants)

(v) COUNT V – BREACH OF CONTRACT (Confidentiality / Non-Disclosure) (Against Defendants Callan and Coldchain)

(vi) COUNT VI – EQUITY-RELATED RELIEF (Breach of Contract) (Against Defendants Callan and Coldchain)

(vii) COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Against All Defendants)

7

(*See generally*, ECF No. 1.)[2]

### I. <u>Choice of Law</u>

Pursuant to the Employment Agreement, "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the state of Texas." (ECF No. 1 at 44.) Defendants argue that this provision "is broad and applies not only to the interpretation of the Agreement but more broadly to the performance of the Agreement, Texas law shall be applied to all of Plaintiff's claims—the breach of contract claims as well as the tort claims." (ECF No. 22 at 5.) Plaintiff disagrees and contends that as to the tort claims, New York law applies because such claims are outside the scope of the provision. (ECF No. 23 at 5-6.) Upon review of the provision, it appears that the tort claims must be governed by New York law.

"Where jurisdiction rests upon diversity of citizenship, [such as here], a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Citibank, N.A. v. Friedman*, 747 F. Supp. 3d 427, 434 (E.D.N.Y. 2024) (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)); *see also Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 333 (2d Cir. 2005) ("The district court in this case, sitting in diversity, was bound to apply New York law to determine the scope of the contractual choice-of-law clause. New York courts decide the scope of such clauses under New York law, not under the law selected by the clause, which here also happens to be New York law.").

Applying New York law to the instant case, tort claims are generally not encompassed in contractual provisions that outline the choice-of-law that the parties agreed upon unless expressly stated. *See id.* at 335 ("Under New York law, then, tort claims are outside the scope of

---

[2] Defendants seek to dismiss Count VI of the Complaint only as to Coldchain. Defendants do not move to dismiss Count VI as against Callan.

contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause.")

> There is a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action. Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be sufficiently broad as to encompass the entire relationship between the contracting parties. Accordingly, "[u]nder New York law, ... tort claims are outside the scope of contractual choice-of-law provisions that [merely] specify what law governs construction of the terms of the contract.

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 211 (S.D.N.Y. 2015) (internal citations and quotations omitted) (finding that the choice-of-law provision only applied to contract claims and not tort claims).

Indeed, the Judge Castel addressed this very issue with a similar clause and concluded, "'matters of construction, validity, and performance' of the loan agreement" would be governed under New York law. *J&R Multifamily Grp., Ltd. v. U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of UBS-Barclays Com. Mortg. Tr. 2012-C4, Com. Mortg. Pass-Through Certificates, Series 2012-C4*, No. 19-CV-1878 (PKC), 2019 WL 6619329, at *4 (S.D.N.Y. Dec. 5, 2019). The plaintiff there argued that Texas choice-of-law rules would apply while defendants disagreed arguing that the provision encompassed all of plaintiff's claims—both contract and tort. *Id.* The Court discussed that the provision was not sufficiently broad to extend to tort claims because the provision would have to "encompass the entire relationship" and allowing this would go against what many courts have held. *Id.* The clause in this case is similarly not broad enough to encompass tort claims as the language expressly states – Texas law governs the "validity, interpretation, construction and performance" – all contractual terms. Notably, Defendants subtly agree that the tort claims should be analyzed under New York law. (*See* ECF No. 25 at n.3.) At oral argument, the parties agreed on New York law as the proper body of law for the tort claims.

Indeed, Defendants assert that Texas law is not settled on the defamation claim and as such, there are no conflicts of law between the two states.

Accordingly, as there is no dispute regarding the contract claims governed by Texas law, only the tort claims will be analyzed under New York law.

## II. Contract Claims

### i. Breach of Contract – Employment Agreement (Count I)

The first count is breach of contract against Callan and Coldchain. To establish a breach of contract claim under Texas law, a plaintiff must plausibly allege (1) a valid contract exists, (2) performance or tendered performance by the plaintiff, (3) defendant breached the contract, and (4) plaintiff suffered damages from the breach. *See Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. Ct. App. 2015). The Complaint alleges that the Employment Agreement signed by the parties is a valid contract, and Plaintiff performed his obligations by carrying out his role and duties as CFO. (ECF No. 1 at ¶¶ 37-38.) Plaintiff further alleges that the Defendants materially breached the contract by terminating Plaintiff for cause without satisfying the for cause definition by failing to provide written notice and a thirty days to cure any deficiencies or alternatively, terminating Plaintiff without cause and not providing the required thirty-day notice, failing to pay the required without cause bonuses, and publicizing the for cause termination in violation of the confidentiality obligations and failing to honor other indemnification obligations. (*Id.* at ¶ 39.) Due to this, Plaintiff has suffered damages both compensable and emotional. (*Id.* at ¶ 40.)

Defendants argue that the with or without cause provision allowed for the termination of Plaintiff and thus cannot be a breach. (ECF No. 22 at 5-6.) However, based on the above, the elements of a breach of contract are sufficiently pled. "Because the Court's role at the pleadings

10

stage is not to 'resolve disputed facts or test the merits of a lawsuit' but instead to consider whether, 'even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief,' … the undersigned finds that [plaintiff] has alleged the existence of a valid contract…." *LaPlante v. Karun Eyewear, Inc.*, No. 23-CV-517-G-BN (DLH), 2024 WL 3176260, at *5 (N.D. Tex. Apr. 29, 2024), *report and recommendation adopted*, No. 23-CV-0517-G-BN, 2024 WL 3869425 (N.D. Tex. Aug. 19, 2024) (citations omitted) (analyzing Texas law). At oral argument, Defendants asserted that they had the right to fire with or without cause, and §11(c)(ii) was their reasoning to terminate, which relates to gross negligence, a reason that cannot be cured. While Plaintiff disagreed, stating that the letter states termination under §5(c). The parties were directed to submit the Termination Letter, and upon review, the language of the Letter states that the termination was provided pursuant to §5(c) for Plaintiff's "unacceptable misconduct", which is then listed. (*See* ECF No. 26.) Section 5(c) outlines that "[a]ny notice of termination of Executive's employment hereunder for Cause, … if not cured, if applicable, in accordance with the above, could give rise to a termination of Executive's employment hereunder for Cause." However, the corresponding Section 11(c)(i) states the term "for cause" means that the Executive may be discharged if among other things the Executive continues to fail or perform, which Plaintiff alleges he did not have an opportunity to cure "within thirty (30) days following written notice" as required. (ECF No. 1 at ¶ 24.)

The parties at oral argument also disputed the interpretation of Section 11(c). Nonetheless, an interpretation of the provisions of the Employment Agreement extends far beyond a motion to dismiss and is more appropriate for consideration on a motion for summary judgment. At this juncture the Court is tasked solely with determining whether the pleading sufficiently pleads a plausible claim. And here, it does.

Defendants further argue that if the Court concludes this way, then damages should be limited to "final compensation" and not any severance payments. (ECF No. 22 at 7-8.) The Court will not address the merits of the sum of damages owed as that is properly suited for trial.

Accordingly, Plaintiff adequately pleads a breach of contract claim.

### ii. Declaratory Judgment (Count II)

The second count seeks declaratory judgment and a declaration from the Court that Plaintiff was terminated for cause thereby breaching the Employment Agreement. (ECF No. 1 at ¶¶ 42-43.) While Defendant argues that this claim is duplicative of the breach of contract claim, "prohibiting declaratory judgments whenever a breach of contract claim is available would negate the [Declaratory Judgments] Act's explicit terms covering such claims." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). However, at the same time, "[t]he declaratory judgment claim must do more 'than merely duplicate the issues litigated' via the contract or tort claims." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (citing *id.*) (discussing that allowing duplicative claims would allow all parties to use the Declaratory Judgments Act as a basis for attorneys' fees in all cases). At oral argument, Plaintiff conceded that such a claim is duplicative. Accordingly, Plaintiff's Second Cause of Action for Declaratory Judgment is dismissed as duplicative.

### iii. Breach of Contract- Confidentiality/Non-Disclosure (Count V)

Plaintiff's fifth cause of action for breach of contract for confidentiality/non-disclosure alleges that a provision of the Employment Agreement imposes confidentiality obligations on Defendants and when Defendants publicized Plaintiff's for cause termination, that resulted in a financial harm, emotional distress and equitable harm. (ECF No. 1 at 16.) The Employment Agreement provides,

> [t]he Parties acknowledge and agree that this Agreement and each of its provisions are and shall be treated strictly confidential. During the Term and thereafter, Executive shall not disclose any terms of this Agreement to any Person or entity without the prior written consent of Company, with the exception of Executive's tax, legal or accounting advisors or for legitimate business purposes of Executive, or as otherwise required by law.

(*Id.*, Exhibit A at § 29.)

Given the above, Defendants aver that the provision "only imposes confidentiality provisions on Plaintiff (Executive) and that the Agreement contains no corresponding obligation on Defendants, and thus, Plaintiff cannot plausibly allege that the Defendants breached the confidentiality provisions." (ECF No. 22 at 13.) More to that point, Defendants argue even if there was an obligation extended to Defendants, the publicization of Plaintiff's termination is not a term of the agreement that was to remain confidential. (*Id.*)

Reviewing the provision in the light most favorable to Plaintiff, there appears to be no breach or violation of the confidentiality clause alleged in the four corners of the pleading. Absent allegations of a breach or non-performance no breach of contract claim lies. *See Seybold v. Charter Commc'ns, Inc.*, No. 23-10104, 2023 WL 7381438, at *4 (5th Cir. Nov. 7, 2023) (outlining breach of contract elements under Texas law). Here, even assuming Defendants were subject to § 29 of the Employment Agreement, informing the public that Plaintiff was terminated for cause does not amount to publicizing *terms* of their agreement. Therefore, Count V is dismissed for failure to state a claim.

### III. <u>Tort Claims</u>

#### i. *Defamation - Per Se and Per Quod (Count (III)*

The third cause of action is a defamation claim against all Defendants alleging that the publications via press release and SEC Form 8-K which announced that he was terminated "for cause" were false and defamatory. (ECF No. 1 at ¶¶ 44-48.)

Under New York law, defamation claims require the following elements to be pled, (i) a defamatory statement of and concerning the plaintiff, (ii) publication of that statement to a third party, (iii) fault, (iv) falsity, and (v) special damages or it must fall under a per se category. *See Greenberg v. Spitzer*, 62 N.Y.S.3d 372, 383 (N.Y. App. Div. 2d Dep't 2017); *see also YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 75 (E.D.N.Y. 2025) (collecting cases) (same). As to the fourth element, special damages do not need to be alleged if Plaintiff establishes that the defamatory statements constitute defamation per se. *Fernandes v. Fernandes*, 227 N.Y.S.3d 642, 643 (N.Y. App. Div. 2d Dep't 2025). Here, Plaintiff's claim falls under a per se category because the alleged untrue statements here "tends to injure another in his or her trade, business, or profession." *Davydov v. Youssefi*, 169 N.Y.S.3d 322, 324 (N.Y. App. Div. 2d Dep't 2022) (internal citations omitted). Furthermore, the defamatory statements must be set forth in the complaint, and "must allege the time, place and manner of the false statement and [omitted] specify to whom it was made." *Bryan v. Slothower*, 84 Misc. 3d 1237(A), at *2 (Sup. Ct., N.Y. Cnty. 2024) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 6 (1st Dep't 1999)). Additionally, the truth is a complete defense to defamation claims. *See Diaz v. Espada*, 778 N.Y.S.2d 38, 40 (N.Y. App. Div. 1st Dep't 2004).

In New York, a qualified privilege attaches to statements when they are made by a person in the discharge of a public or private duty. *See Rosenberg v. MetLife, Inc.*, 866 N.E.2d 439, 442 (N.Y. 2007); *Loughlin v. Goord*, 558 F. Supp. 3d 126, 152 (S.D.N.Y. 2021) (same). However, this privilege can be "overcome by a showing of either 'actual' malice…or of common-law malice." *Id.* at 154 (citing *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011)) (actual malice includes "knowledge of the statement's falsity or reckless disregard as to whether it was false.") The burden of showing this is on the Plaintiff, and "mere conclusory allegations, or charges

based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege."
*Id.* (citing *Chandok*, 632 F.3d at 815).

Here, the false statement at issue was that Plaintiff was terminated for cause. (ECF No. 1 at ¶ 45.) Plaintiff alleges that the publications of the statements in a press release and the SEC Form 8-K stating he was terminated for cause were knowingly false because he did not commit any "for cause" acts. (ECF No. 1 at ¶ 26.) Plaintiff further argues that he has sufficiently pleaded both common law and actual malice, so Defendants' statement is not entitled to qualified immunity. (ECF No. 23 at 16.) Plaintiff reasons that the performance deficiencies cited by the Defendants in his termination letter were not the true reasons for his termination. (ECF No. 1 at ¶ 20.) He further argues that the Defendants terminated him "for cause" so that his stock options would not vest, with a reckless disregard for the impact upon him. (*See* ECF No. 23 at 16.)

Defendants argue that the statements were not defamatory because they are true, as the Plaintiff was terminated "for cause." (ECF No. 25 at 3.) They additionally argue that even if the statement was demonstrated to be false, qualified privilege would shield it from a claim of defamation. (*See id.*) Defendants assert that they did not act with malice, and Plaintiff's allegations are conclusory. (*Id.* at 4-5.) Defendants also contend that the termination due to unvested stock options argument was not alleged in the Complaint and is false considering the options had already been vested prior to termination. (*Id.* at 5.)

The crux of Plaintiff's defamation claim is that he was, indeed, terminated "for cause." (ECF No. 1 at ¶ 22) ("Defendants delivered a 'Notice of Immediate Termination of Your Employment Agreement," [] which purported to terminate Plaintiff under the pretext of, 'for cause,' effective immediately.") While Plaintiff argues that the reasons cited for his termination were not the true underlying reasons, the statement that he was terminated for cause is still true.

*Dillon*, 704 N.Y.S.2d at 39 ("[Plaintiff] also argues a defamation theory arising from Ferdenzi's alleged statement… that [Plaintiff] had been 'fired' (a true statement), intimidating that it was for cause (again, true)….the particular words giving rise to the implication are not set forth in any manner that would support a defamation claim.")

Even assuming the statement was false, qualified immunity attaches here. Courts have long shielded certain statements, even if possibly defamatory, from liability. *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992). This qualified immunity attaches to "communication[s] made by one person to another upon a subject in which both have interest.'" *Id.* Here, Defendants argue that they had a legal duty to disclose the change in CFOs to their investors, the SEC, and the general public, citing to a need for transparency with their shareholders. (ECF No. 22 at 11.) This legal duty has been recognized by courts. *See Loughlin*, 558 F. Supp. 3d at 152 ("The Court concludes that the New York Court of Appeals would conclude that the 10-Q statement at least is subject to a qualified privilege. Two state courts applying non-New York law have held that allegedly defamatory statements contained within SEC filings are protected by qualified privilege.") The *Loughlin* case found a qualified privilege for SEC filings due to their investors common interest in the information at the hand. *Id.* at 153. The same concept applies here. Defendants' SEC filing and press release were communications that the shareholders, the SEC and the public share an interest in.

However, the qualified immunity privilege may be overcome by a showing of actual or common-law malice. But mere conclusory allegations do not suffice to defeat the privilege. *Id.* at 154 (citing *Chandok*, 632 F.3d at 815). The Defendants here argue that the malice theory fails as a matter of law because the complaint's allegations are conclusory. (*See* ECF No. 25 at 4-5.) The Plaintiff argues that there is actual malice due to the "publishing [of] false statements about the

reason for Plaintiff's discharge in order to tarnish Plaintiff's reputation, and to prevent Plaintiff's stocks from vesting, all the while ensuring that the Defendants did not have to abide by the Agreement…" (ECF No. 23 at 17.) As set forth in the Complaint, the Plaintiff's stock option vested before his termination. (ECF No. 1 at ¶ 16.) The other arguments that Plaintiff makes rely on opinions and conclusory allegations, such as the Defendants intending to tarnish his reputation. *Dillon*, 704 N.Y.S.2d at 7 ("Actual malice is not supported in these pleadings where allegations of ill-will and spite manifested by the letter rest solely on surmise and conjecture.") At oral argument, Plaintiff agreed that a qualified immunity privilege could attach but it is overcome by the fact that Defendants acted with malice. Yet, when asked where actual malice is pled, there were more questions asked than answered. As stated on the record, the conclusory statements are not sufficient to overcome the privilege. (*See* ECF No. 1 at ¶¶ 20-21, 25-28, 44-48.) Plaintiff's assertions that the statements were made "knowingly" without pointing to how, bears more on the breach of contract claim than tort claims as the malice component is missing. The Court is unable to discern actual malice from the current pleading. For example, there are no allegations that someone overheard the Defendants knowingly making false statements or an email indicating the same.

Additionally, Plaintiff labels this claim "per se and per quod". *See Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247, 251 (N.Y. App. Div. 1st Dep't 2009) ("Libel is broken down into two discrete forms—libel per se, where the defamatory statement appears on the face of the communication, and libel per quod, where no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication.") As such, Plaintiff is "required to allege special damages." *See Salescare, Inc. v. SEIU 1199 Nat'l Benefits Fund*, 201 N.Y.S.3d 37 (N.Y. App. Div. 1st Dep't 2023); *see also*

*Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 145 (S.D.N.Y. 2022) (citing to New York cases) (discussing that the lack of pleading special damages is a "fatal defect"). Here, apart from the conclusory statement that Plaintiff suffered special damages, there are no allegations to support this type of claim. *See Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997) (citing New York cases) (requiring special damages to be alleged and that "round figures or a general allegation of a dollar amount as special damages will not suffice"); *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*, 893 N.Y.S.2d 414, 417 (N.Y. App. Div. 4th Dep't 2009) (discussing that special damages must be pled with particularity). Therefore, Count III is dismissed for failure to state a claim.

### ii.  Tortious Interference with Prospective Business Relations (Count IV)

The next claim is tortious interference with prospective business relationship against all Defendants. "To establish entitlement to relief on this theory, a plaintiff must show that the defendant used wrongful and tortious means to interfere with the prospective business, based solely on malicious grounds" *Baldeo v. Majeed*, 55 N.Y.S.3d 340, 344 (N.Y. App. Div. 2d Dep't 2017).

> While New York law recognizes the tort of interference with both *prospective* and *existing* contracts, "greater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition) than to the less substantive, more speculative interest in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer)."

*White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 425–26, 867 N.E.2d 381, 383 (N.Y. 2007).

Here, Plaintiff alleges that he "had prospective business relationships and reasonable expectancy of economic advantage with potential employers and clients, including his prior fractional-CFO firm, … [which] Defendants knew of those relationships … [and acted] with

malice … directly caus[ing] the loss of those expectancies." (ECF No. 1 at ¶¶ 50-52.) Plaintiff does not further outline what the wrongful means were or provide additional allegations apart from the above on the more culpable required conduct. *See Lynch Dev. Assocs., Inc. v. Johnson*, 195 N.Y.S.3d 784, 786 (N.Y. App. Div. 2d Dep't 2023) (citations and quotation marks omitted) (The wrongful means supporting a cause of action for intentional interference with a business relationship may include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure, but will not include persuasion alone, even where it is knowingly directed at interference with the contract.") Without more, the Court may not determine even assuming the truth of the pleadings, what wrongful means were used. Conclusory allegations are not enough and that is what appears in the Complaint. *See id.* This was further evidenced by counsel's request to amend the pleadings numerous times at oral argument.

Accordingly, Count IV is dismissed for failure to state a claim.

### iii. *Negligent Infliction of Emotional Distress (Count VII)*

Count Seven alleges negligent infliction of emotional distress against all Defendants. Such claims to recover damages "generally must be premised upon the breach of a duty owed to [the] plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." *Aklipi v. Am. Med. Alert Corp.*, 216 A.D.3d 712, 713, 189 N.Y.S.3d 533, 534 (N.Y. App. Div. 2d Dep't 2023) (internal citations omitted). "Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Lynch v. Roman Cath. Diocese of Brooklyn*, No. 23-CV-4800 (NRM) (LKE), 2026 WL 621957, at *6 (E.D.N.Y. Mar. 5, 2026) (quoting *Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y. 2002)).

"A plaintiff must also establish that his injuries were foreseeable." *Id.* (citing *Aegis Ins. Servs. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013)). Here, Plaintiff's Complaint alleges that Defendants owed a duty of care to Plaintiff "not to jeopardize Plaintiff's well-being, nor to endanger Plaintiff's sense of safety and freedom from emotional or physical harm." (ECF No. 1 at ¶ 64.) Yet, through their defamatory statement and gross malicious conduct, Plaintiff suffered damages. (*Id.* at ¶ 65.) Defendants argue that this claim is duplicative to the defamation claim. (ECF No. 25 at 9.) The Court agrees. Other courts have similarly dismissed tort claims that stem from the same allegations of a defamatory claim. *See Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 24 (N.Y. App. Div. 1st Dep't 2024), *leave to appeal dismissed*, 268 N.E.3d 1006 (2025) ("Karl's claims for negligent and intentional infliction of emotional distress were correctly dismissed as duplicative of his defamation claims"); *see also McCollum v. Baldwin*, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023) (dismissing an intentional infliction of emotional distress claim as duplicative of the defamation claim); *Jacob v. Lorenz*, No. 21-CV-6807 (ER), 2023 WL 4106298, at *14 (S.D.N.Y. June 21, 2023) (internal citation omitted) ("New York cases have held that a separate cause of action for what are essentially defamation claims should not be entertained"). The Complaint here does the same as Plaintiff alleges that the defamatory statement led to physical and emotional harm. (ECF No. 1 at ¶¶ 63-68.)

In any event, the duty to Plaintiff when a contractual relationship exists seems slim to none. *See Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) ("A cause of action for negligent infliction of emotional distress may only lie where a defendant owes a 'special duty' to the plaintiff, and an employer does not owe a special duty to an individual employee, because it has an obligation to treat all employees in the same manner.") Plaintiff relies on *Brown v. New York Design Ctr., Inc.*, 185 N.Y.S.3d 97 (N.Y. App. Div. 1st

20

Dep't 2023). However, that case was decided at the summary judgment phase of the case, and as such is inapplicable here.

Accordingly, Count VII is dismissed for failure to state a claim.

### IV.    Defendant Coldchain

As a final matter, Defendants argue that Coldchain should be dismissed since there is no privity of contract between Plaintiff and Coldchain. (ECF No. 22 at 14-15.) In addition, Defendants argue that the tort claims fail against Coldchain as well because any tortious statements were made by "Defendant Callan, a public entity required to file the SEC 8-K filing. Coldchain did not make or issue any such statements." (*Id.* at 15.) Plaintiff disagrees arguing that Coldchain was a joint employer of Plaintiff and either ratified or otherwise authorized the defamatory statements. (ECF No. 23 at 24-25.) Plaintiff argues that New York law applies to determine whether Coldchain is liable. (*Id.* at 23.) The Court agrees. Coldchain was not a signatory of the Employment Agreement, which includes the choice of law provision. *See Sherrod v. Mount Sinai St. Luke's*, 168 N.Y.S.3d 95, 100 (N.Y. App. Div. 2d Dep't 2022) (discussing that "only parties in privity of contract may enforce terms of the contract such as a forum selection clause found within the agreement"). Therefore, any claims against Coldchain will be analyzed under New York law. *See Alvarado v. Sweetgreen, Inc.*, 712 F. Supp. 3d 393, 408 (S.D.N.Y. 2024) ("[A] federal court sitting in diversity, while using its own rules to govern procedural matters, will apply the substantive law of the forum state.")

As a general matter, breach of contract claims are limited to the parties to an agreement. *See Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, 813 N.Y.S.2d 751, 752 (N.Y. App. Div. 2d Dep't 2006) ("[T]he breach of contract cause of action was properly dismissed as to the respondent, since he was not a party to the agreement in question.") Liability may attach under

21

certain circumstances. "Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties." *Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 111 (N.Y. App. Div. 2d Dep't 2009). In addition, a non-signatory may be bound by the contract if it is shown that the non-signatory intended to be bound. *See Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-CV-8987 (GHW), 2019 WL 1244294, at *12 (S.D.N.Y. Mar. 18, 2019); *see also Horsehead Indus., Inc. v. Metallgesellschaft AG,* 657 N.Y.S.2d 632, 633 (N.Y. App. Div. 1st Dep't 1997). "The Court can determine whether a party intended to be bound by a contract on a motion to dismiss." *Id.* (citing *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 108 (N.Y. 2018)). Here, the Complaint alleges that in October of 2024, "Plaintiff and Defendants, Callan and Williams, entered into / executed a contract – a written Employment Agreement – for Plaintiff … [and, later on] October 24, 2024, the parties (Plaintiff, Williams, and Callan) further entered into a written Amendment to [t]he Employment Agreement." (ECF No. 1 at ¶ 26.) In addition, the attached Employment Agreement does not include any signatures for or from Coldchain. (*See id.* at Exhibit A.)

While Plaintiff asserts that there is common ownership with all the Defendants including Coldchain, there are no allegations in the Complaint sufficient to support a plausible claim. Plaintiff also pointed to the cases of *Jennings v Hunt Companies, Inc.*, 367 F.Supp.3d 66 (S.D.N.Y. 2019), and *Impulse Marketing Grp. Inc. v Nat'l Small Bus. All., Inc.*, No. 05-CV-7776 (JFK), 2007 WL 1701813 (S.D.N.Y. June 12, 2007). However, those cases are distinguishable. For example, in *Jennings*, the Court found that the subsidiary company who was not a signatory to the contract manifested an intent to be bound as the complaint alleged that during the negotiations the subsidiary "was prepared to provide Plaintiff with whatever resources he needed to start and run [the parent company] which both Agreements required Plaintiff to do… [and]

22

also state[d] that the [subsidiary] and Plaintiff 'conducted intense negotiations over the terms and conditions' of the Agreements."  367 F. Supp. 3d at 71–72. Here, the allegations are far from that. The Complaint alleges that Coldchain is a subsidiary or affiliate of Callan, and that Coldchain and Callan were joint employers of Plaintiff. (ECF No. 1 at ¶¶ 6-7.) Indeed, the Complaint also states that the Employment Agreement was signed by all Defendants and Plaintiff, which is incorrect. (*Id.* at 37.) What is absent in the Complaint are allegations that Coldchain either negotiated the agreements or any other document that is referenced showing Coldchain's intent to be bound. Likewise in *Impulse Marketing Grp. Inc.*, the Court found that the plaintiff sufficiently alleged that the non-signatory assumed the contract because there were allegations that the company's actions acted "under the obligation of a contract than one that is merely assisting in its administration." 2007 WL 1701813, at *6. There were also allegations that the non-signatory stated that it "was the real party in interest" showing it assumed the contract. *Id*. Accordingly, all contract-based claims against Coldchain are dismissed.[3]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED in part** and **DENIED in part** as follows:

(i)     Counts II, III, IV, V, and VII are dismissed *without prejudice*, and with leave to amend either by stipulation or to move under Fed. R. Civ. P. 15 and 16.[4]  The date by which such a stipulation or motion for leave shall be filed is May 14, 2026.

---

[3] Plaintiff also argues that there are different theories under the laws of Texas that may bind non-parties such as agency, or incorporation by reference. (ECF No. 23 at 24.) However, the Complaint fails to allege any of these theories or factual support thereto and the Court is assessing such claims under New York law.

[4] Under the current Scheduling Order, the deadline to amend the pleadings was March 20, 2026 (*see* ECF No. 16), and as such Rule 16 is implicated. *See Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021) ("The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4).")

(ii)     Counts I, II, V, and VI against Coldchain are dismissed *with prejudice*,

(iii)    Counts III, IV and VII against Coldchain are dismissed as *moot* due to the previous dismissal, and

(iv)     The Parties shall submit a Joint Status Report on or before **May 14, 2026**, addressing the status of remaining discovery.

Dated: Central Islip, New York.
        April 15, 2026

S O  O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
